# Larue *against* White and McKoin.

CHANCERY.

[Mr. Owsley for plaintiff: Mr. C. A. Wickliffe for defendants.]

FROM THE CIRCUIT COURT FOR HARDIN COUNTY.

Judge MARSHALL delivered the opinion of the Court.

*April* 22.

THE original bill in this case was filed by Singleton and wife against the executors and distributees of Daniel Waide, deceased, to obtain a settlement and distribution of his estate.

Statement of the case.

Larue, the acting executor, alleges, in his answer, that he has paid J. J. White and J. L. McKoin, two of the defendants, who had married daughters of Waide, more than they were entitled to; that he had paid to White, in right of his wife, thirteen hundred and thirty two dollars, when he was entitled to receive only six hundred and forty four dollars and thirty five cents; and to McKoin seven hundred and eighty two dollars, when he was entitled only to five hundred and forty nine dollars and seventy two cents; and he prays a decree against each, for the excess of payment to him. This was not expressly made a cross bill, but was answered as such by White and McKoin, who allege that they had made a full, fair and final settlement with Larue, as executor &c. and had received the payments made in virtue of that settlement, and by way of compromise of their claims against him. And denying that they had received more than was due to them, or even as much, they rely on the settlement and compromise as a bar to Larue's claim against them. In their answers to the original bill, they had also alleged that they had made a final settlement with the executor, and had no further claim against him, or interest in the suit.

On the hearing, the Court, besides decreeing upon the original bill, dismissed the cross bill of Larue. And to reverse this decree upon the cross bill, Larue prosecutes this writ of error.

Spring Term
1839.

Larue
vs
White & McKoin

Where an ex'or and legatee, upon reasonable notice, have attempted a settlement, and have finally agreed that a certain sum shall be paid & received, as the balance due the legatee, and a final discharge given to the ex'or, which is done, the settlement is binding & conclusive upon him—unless it is successfully impeached, upon the ground that the result was produced by fraud, mistake, or some improper means.

Although the mere fact that an executor has made current payments upon account, and without any attempt at final adjustment, may not afford very strong, and certainly not conclusive, evidence that the whole amount paid was due to the distributee, we deem it to be unquestionable, that a settlement between the parties, intended and understood to be final, made after timely notice and with due deliberation, and closing with the payment of a certain sum paid and receipted for as in full discharge of the demand, is conclusive against the executor, as it would be against any other debtor, unless successfully impeached on the ground of fraud, or mistake, or undue advantage, or some improper means used in procuring it. No such impeachment has been made in the pleadings; the substance of which on the side of the executor, so far as they relate to this subject, have been already stated. And in our opinion the proof is not sufficient to overturn the settlement on either of these grounds, if it had been properly impeached in the pleadings.

It appears that the settlement was made with some reference to a statement of the accounts prepared in part by the clerk of the County Court, and in part by White, who exhibits it as a part of his answer to the cross bill. This statement seems to be entirely intelligible, and must have been understood by the executor to whose transactions alone it referred. If correct in all respects, this account would show that White and McKoin were entitled to more than they received, as they allege that they were, in their answers. On the other hand, it appears that Larue supposed, at the time, that he was paying something more than was actually due. And the sum finally agreed to be paid and received as full payment, was fixed on for the purpose of closing the controversy and preventing litigation. It further appears that, the settlement itself, after being commenced, in May, 1830, when partial payments were made, was suspended, at Larue's request, until August, when it was closed by full payment and receipts.

Were it conceded that a settlement thus made, could be defeated by the mere fact that too much had been paid, without showing how the mistake occurred, or how it had been discovered, it must still be admitted that the excess itself should be fully established by proof, and shown to be of such magnitude as to produce the conviction that there had been fraud or mistake in the settlement. But there is nothing in the record which can be considered as coming up to this requisition. The executor files with his answer to the original bill, a long and minute statement of his executorial accounts, in which interest is calculated on every item on both sides; but it is accompanied by no vouchers or other proof. And there are two reports from auditors appointed in this case. But these exhibit only the general results of the calculations made by the auditors, and are also unaccompanied by vouchers or proof. And it is to be observed that, although the executor relies on his settlements with the County Court, made many years before, and refers to them as a part of his answer, and although the auditors also profess to take those settlements, with other vouchers not named, as a base for their calculations, the settlements themselves seem never to have been filed and are not contained in this record. Except these documents, there is no other evidence worthy of being mentioned, which tends to establish the alleged excess. And it is clear that these documents, being themselves unaccompanied by the requisite proofs to establish their own correctness, are not sufficient to outweigh the deliberate acts and admissions of the executor himself, against his own interest, or to show that he did not voluntarily and understandingly make the settlement and payments of which he now complains, but which if thus made are binding upon him.

It might also be shown that the auditors' reports, between which there is a considerable variance, are upon their face liable to exceptions, the correction of which would reduce the credits allowed to the executor. But deeming them insufficient, for the reasons already stated, to defeat the settlement relied on by White and McKoin, in bar of the executor's claim upon them, we are

Spring Term 1839.

*Larue*
vs
*White & McKoin*

If the settlement could be defeated by merely showing that the executor had in fact paid more than was due, the excess should be proved, & shown to be such as to produce the conviction that there was fraud or mistake in the settlement.

Reports of auditors, without the vouchers to sustain them, are not sufficient to outweigh the admissions of an ex'or, against his interest, and show that a settlement or compromise, made by him, with legatees, was not made understandingly, or not conclusive.

Spring Term
1839.

of opinion that the Circuit Court did not err in dismissing his cross bill. And that being the only matter to be decided on this writ of error, the decree as to that is affirmed.

